# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

_____

| In Re: | |
|---|---|
| TERRY THAMES, | **Bankruptcy Case** <br> **No. 05-40043** |
| **Debtor.** | |

_____

### SUPPLEMENTAL MEMORANDUM OF DECISION
_____

**Appearances:**

      Jay A. Kohler, Idaho Falls, Idaho, Attorney for Debtor.

      Lisa A. Wood, RACINE, OLSON, NYE, BUDGE & BAILEY, Pocatello, Idaho, Attorney for Creditor Keller Supply.

### Background

On June 29, 2005, Creditor Keller Supply Company ("Keller") filed a motion ("Motion") seeking reconsideration of the Court's Memorandum of Decision and Order entered on June 20, 2005. Docket No. 32. After an evidentiary hearing concerning Chapter 7 Debtor Terry Thames' motion seeking

SUPPLEMENTAL MEMORANDUM OF DECISION - 1

to avoid several judicial liens under 11 U.S.C. § 522(f)(1)(A), one of which was Keller's lien, the Court concluded that Keller did not have an enforceable lien against Debtor's real property because it had recorded its judgment in the wrong county. Mem. Decision, Docket No. 29. The Court therefore denied Debtor's motion to avoid Keller's lien, as the issue was moot. Order, Docket No. 30.

Keller's Motion offers evidence showing that it did properly record its judgment in the correct county so that its judgment lien attached to Debtor's property. Counsel for Keller represents that she inadvertently submitted the wrong document into the evidentiary record during the hearing.

On July 27, 2005, the Court conducted a hearing on Keller's Motion. While no written objection had been filed, Debtor's attorney appeared and voiced Debtor's opposition to the Motion. The Court took the Motion under advisement and after due consideration of the circumstances, concludes the Motion should be granted and the evidence that Keller's judgment lien was recorded in Fremont County should be considered. However, even assuming Keller's lien was properly

SUPPLEMENTAL MEMORANDUM OF DECISION - 2

perfected under Idaho law,[1] the Court concludes it may be avoided by Debtor under 11 U.S.C. § 522(f).

## Facts

The relevant facts concerning this matter are set forth in the Court's June 20, 2005, Memorandum of Decision, and need not be repeated here except as required to explain the circumstances surrounding Keller's Motion.

---

[1] Keller failed to obtain and record a transcript or abstract of the foreign judgment that had been properly certified by the Bingham County clerk of court. In its prior decision, the Court discussed how such a failure may render Keller's lien invalid. Mem. Decision at 11, Docket No. 29. Keller argues that because the Idaho Supreme Court in *Westmark Fed. Credit Union v. Smith*, 776 P.2d 1193, 1195 (Idaho 1989) held that substantial compliance with the statute by a creditor in perfecting a judgment lien is sufficient, its lien is valid. However, in *Westmark*, the court validated an execution issued upon a lien despite an error committed by the execution officer. Here, the error was committed by Keller (or its lawyers) by failing to obtain a properly certified copy of the transcript or abstract from the local court clerk before recording the judgment. *See Messenger v. Burns*, 382 P.2d 913, 916 (Idaho 1963) (noting that the creation of a judgment lien requires a transcript or abstract of the judgment to be "certified" by an Idaho court clerk). Keller submitted an affidavit of Sandra Hill, the Bannock County court clerk who processed Keller's documents, in an attempt to prove that it was the clerk's office that erred because it assumed the "Certificate of Service" appended to the Clerk's Notice of Filing of Foreign Judgment satisfied the certification requirement. Aff. of Hill, Docket No. 36; Mot., Ex. B, Docket No. 31. By contrast, in *Westmark*, the creditor's foreign judgment was properly certified by the Bingham County clerk before it was recorded. *See* Mot., Ex. C, Docket No. 29 (showing a copy of the actual lien recorded in the *Westmark* case, showing the clerk's certification stamp). Therefore, Ms. Hill's affidavit changes nothing: unlike in *Westmark*, there was no a clerical error – only a legal one related to the perfection of the lien itself. It is doubtful *Westmark* saves Keller's lien in this case. Even so, in the interests of justice and economy, the Court will address the merits of Debtor's avoidance motion on the assumption Keller's lien was properly recorded.

SUPPLEMENTAL MEMORANDUM OF DECISION - 3

In his motion to avoid liens, Debtor alleged that Keller held a judgment lien, recorded as Instrument No. 481298 in the records of Fremont County, that impaired his claimed homestead exemption in real property he owned in Ashton Hills Estates. Mot. at 3, Docket No. 14. At the hearing, however, Keller introduced a copy of a judgment that had been recorded in Madison County on May 16, 2003. Ex. C1-C. No evidence was introduced to show the judgment had ever been recorded in Fremont County, the location of Debtor's house. Based upon this evidentiary record, the Court was obliged to hold that Keller did not have a lien enforceable against Debtor's property, because under Idaho Code § 10-1110, a lien attaches only to real property located in the county in which a judgment is properly recorded. Mem. Decision at 11–12, Docket No. 29.

In support of the present Motion, Keller submits the documentation it concedes should have been offered at the hearing. Reviewing this documentation, it appears Keller did indeed record its judgment in Fremont County. *See* Ex. B, Docket No. 31.

**Keller's Arguments**

Keller argues that it should be granted relief from the Court's findings and conclusions that it has no enforceable lien as to Debtor's Fremont County house. Keller's attorney asserts that she inadvertently failed to introduce

SUPPLEMENTAL MEMORANDUM OF DECISION - 4

the correct documents into the record at the evidentiary hearing and that her error was pure oversight. Keller correctly points out that Debtor identified the Fremont County lien number in his motion and did not contest the validity of Keller's judgment lien. Therefore, Keller asks the Court to consider the exhibits attached to its motion as part of the evidentiary record, and to rule on the merits of its earlier arguments that Debtor did not have a valid homestead exemption such that its lien could be avoided under § 522(f) of the Bankruptcy Code.

As to the merits, Keller advanced several arguments to support its objection to Debtor's motion to avoid its lien.[2] First, Keller argues that because its judgment lien attached to Debtor's real property before Debtor could claim an exemption by recording his declaration of homestead, its lien has priority under state law and may not be avoided. Second, Keller contends that Debtor never resided in the partially unfinished house, and therefore the property does not qualify as a homestead under Idaho Code § 55-1001. Finally, Keller argues that

---

[2] Keller explained its theories in its objection, Docket No. 18, and in its post-hearing brief, Docket No. 27. The Court regrets its error in indicating in its Memorandum of Decision that it had not authorized Keller to file a post-hearing brief. Mem. Decision at 2 n.1, Docket No. 29. In fact, the Court did invite further briefing. Minute Entry, Docket No. 26. The Court has now considered all of Keller's arguments, including those advanced in Keller's post-hearing brief, in connection with rendering this decision.

SUPPLEMENTAL MEMORANDUM OF DECISION - 5

Debtor has resided elsewhere for a period of six months, thereby raising the presumption of abandonment under Idaho Code § 55-1006.

### Disposition

**A. Excusable Neglect.**

Fed. R. Civ. P. 60(b)(1), made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 9024, allows the Court to relieve a party from the effects of a final judgment or order for "mistake, inadvertence, surprise, or excusable neglect . . . ." The determination of whether excusable neglect has been shown is, at bottom, an equitable one, requiring the Court to consider all relevant circumstances surrounding a party's, or its lawyer's, error or omission. *Pincay v. Andrews*, 389 F.3d 853, 856, 860 (9th Cir. 2004) (noting that the standard was an equitable one requiring a flexible approach, declining to adopt a strict per se rule, and citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *In re Bott*, 03.2 I.B.C.R. 125, 125 (Bankr. D. Idaho 2003). The factors the Court should consider are: (1) the danger of prejudice to the opposing party; (2) the gravity of the neglect and its potential impact on the proceedings; (3) the reason for the neglect; and (4) whether the movant acted in good faith. *Pincay*, 389 F.3d at 859; *Bateman v. United States Postal Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000); *In re Bish's Boys, LLC*, 02.1 I.B.C.R. 6, 7 (Bankr. D. Idaho 2002).

SUPPLEMENTAL MEMORANDUM OF DECISION - 6

In this case, although Counsel's mistake in submitting the wrong documents into evidence is not a compelling excuse, in the exercise of the Court's discretion, the Court will grant Keller's Motion and allow the correct documents now submitted to be considered part of the evidentiary record related to Debtor's motion to avoid Keller's lien.  Debtor was obviously aware that Keller's judgment had been recorded in Fremont County, because it cited the correct instrument number in its motion.[3]  Debtor did not contest the existence or validity of Keller's lien, despite Counsel's mistake.  And Debtor had a fair opportunity to present evidence and testimony concerning the merits of his argument that Keller's lien should be avoided.

Moreover, there is a potential for harm here if the Court does not grant Keller's Motion, as the proceedings will not be decided on the merits but upon an evidentiary technicality.  If Keller indeed holds a judgment lien in Fremont County, Debtor deserves an opportunity to challenge that lien on his homestead under § 522(f).

---

[3] The Court could not consider, however, the statement made in Debtor's motion as evidence.  Evidence may be presented by affidavit or by oral testimony, Fed. R. Civ. P. 43(e); Fed. R. Bankr. P. 9017, or the parties may stipulate to the facts.  *In re Garner*, 246 B.R. 617, 624 (B.A.P. 9th Cir. 2000) (noting that evidence on motions in contested matters may be received by way of affidavit or by oral testimony at an evidentiary hearing).  But the rules do not allow the Court to consider as evidence unsubstantiated statements made in a motion.

SUPPLEMENTAL MEMORANDUM OF DECISION - 7

Thus, all things considered, the Court concludes Keller's motion for relief from the Court's prior decision and order should be granted. The Court will allow Keller to supplement the evidentiary record with the documents attached to its Motion, and the Court will resolve the issues raised by Debtor's motion in light of that new evidence.

**B. Debtor's Motion to Avoid Keller's Lien.**

Section 522(f)(1)(A) of the Bankruptcy Code provides, in pertinent part, that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . if such lien is . . . a judicial lien[.]" Debtor has the burden of proving the following: "(1) an exemption to which [he is] entitled under § 522(b); (2) that the property is listed on debtor's schedules and claimed as exempt; (3) that the lien impairs the exemption; and (4) that the lien is judicial rather than consensual." *In re Johnson*, 262 B.R. 831, 843 (Bankr. D. Idaho 2001) (quoting *In re Conley*, 99.1 I.B.C.R. 7, 7 (Bankr. D. Idaho 1999)).     The last three elements are undisputed. There is no question that Keller's lien is a judicial lien as that term is defined in 11 U.S.C. § 101(36).[4] Debtor claimed an

---

[4] Although Keller provided materials Debtor used to construct his home, Keller obtained a money judgment instead of pursuing foreclosure of a statutory lien for labor and materials under the mechanic's lien statutes. Keller did not introduce any evidence that it had ever recorded a notice of lien under the mechanic's lien statute, Idaho Code

SUPPLEMENTAL MEMORANDUM OF DECISION - 8

exemption under Idaho Code § 55-1003 in the Ashton Hills Property in his schedules. Schedule C, Docket No. 1. And there is no doubt that Keller's $30,000 lien impairs Debtor's $50,000 exemption claim in his homestead. Debtor represents without contradiction that the market value of the property is $100,000, and that the house and property are subject to consensual liens amounting to $78,000. Schedules C, D, Docket No. 1. With $22,000 of equity in the home at most, Keller's judicial lien impairs Debtor's homestead exemption. *See* 11 U.S.C. § 522(f)(2)(A) (prescribing a formula approach for determining impairment); *In re Johnson*, 262 B.R. at 844 (determining impairment under § 522(f)). Thus, the only real dispute between the parties concerns the propriety of Debtor's homestead exemption as to this property.

**C. Debtor's Homestead.**

**1. The priority of Keller's judgment over Debtor's alleged homestead exemption under state law does not protect the lien from avoidance under the Bankruptcy Code.**

As did the creditor in *In re Field*, 05.1 I.B.C.R. 11, 13 (Bankr. D. Idaho 2005), Keller argues that its lien rights are superior to Debtor's homestead exemption under Idaho Code § 55-1005(1), and therefore its lien may not be

---

§ 45-501. The Court discussed the implications of such a choice in its Memorandum of Decision as it related to the statutory lien and judgment of foreclosure awarded to Creditor Stronks & Sons do it Best Home & Hardware, LLC. *See* Mem. Decision at 13–16, Docket No. 29.

SUPPLEMENTAL MEMORANDUM OF DECISION - 9

avoided in Debtor's bankruptcy case.[5] The Court rejects Keller's argument for the same reasons expressed in *In re Field*. Even if Keller's lien has priority under state law over Debtor's homestead exemption, the lien may still be avoided under § 522(f) because the Bankruptcy Code "trumps the state priority scheme when it comes to avoiding liens . . . [B]ankruptcy courts are instructed to . . . consider, in the abstract, whether the debtor would be entitled to an exemption under state law if the lien did not exist . . . [and] whether the debtor would be entitled to an exemption under state law '*but for the lien itself*.'" *Katz v. Pike* (*In re Pike*), 243 B.R. 66, 72 (B.A.P. 9th Cir. 1999), *quoted in In re Field*, 05.1 I.B.C.R. at 13.

### 2. Debtor's homestead exemption is valid.

A prerequisite to Debtor's avoidance of Keller's lien[6] is a valid homestead exemption. *In re Field*, 05.1 I.B.C.R. at 13. The relevant date for determining the status of Debtor's homestead exemption claim, as well as his

---

[5] Idaho Code § 55-1005(1) provides that the homestead is subject to execution or forced sale in satisfaction of judgments that constitute liens upon the premises and that are obtained before the homestead is in effect.

[6] It is of no moment that Keller did not object to the allowance of Debtor's homestead exemption earlier in the bankruptcy case. *See In re Field*, 05.1 I.B.C.R. at 13 n.7 (explaining that a judgment lien creditor's failure to object to a debtor's homestead exemption claim does not preclude the creditor from challenging the homestead exemption as a defense to a debtor's § 522(f) lien avoidance motion); *In re Conley*, 99.1 I.B.C.R. at 7.

SUPPLEMENTAL MEMORANDUM OF DECISION - 10

§ 522(f) lien avoidance rights, is the petition date.[7]  11 U.S.C. § 522(b)(2)(A); *Goswami v. MTC Distrib.* (*In re Goswami*), 304 B.R. 386, 390–92 (B.A.P. 9th Cir. 2003) (citing *White v. Stump*, 266 U.S. 310, 313 (1924)).  In Idaho, exemption rights are determined under state law.  11 U.S.C. § 522(b); Idaho Code § 11-609.  Idaho law allows debtors to claim a homestead exemption in real property.  Idaho Code §§ 55-1001–1011; *In re Field*, 05.1 I.B.C.R. at 13.  The Court liberally construes the homestead statutes in favor of the debtor.  *Id.*  The amount of the homestead exemption may not exceed the lesser of the net value of the land, or $50,000.  Idaho Code § 55-1003.

In *In re Field*, the Court discussed the two types of homesteads typically recognized under Idaho law, as well as the methods for claiming an exemption in each.  05.1 I.B.C.R. at 13–14.  Under Idaho Code § 55-1001(2), a homestead may consist of either "a dwelling house or the mobile home in which the owner resides or intends to reside, . . . and the land" upon which it sits, or "unimproved land owned with the intention of placing a house or mobile home" on the land for the purpose of residing there.  Before a homestead will be

---

[7] Throughout its brief, Keller incorrectly focuses upon the status of Debtor's exemption as of May 16, 2003, the date it recorded its judgment.  Brief at 4–6, Docket No. 27.  This Court explained that the petition date is the relevant date for determining the status of a debtor's homestead exemption in *In re James*, 05.1 I.B.C.R. 16, 17 (Bankr. D. Idaho 2005).

SUPPLEMENTAL MEMORANDUM OF DECISION - 11

protected by the exemption in Idaho Code § 55-1003, the exemption must be established either automatically by occupation of the property by the owner (*i.e.*, the debtor) as a principal residence, or by recording an appropriate declaration as required by Idaho Code § 55-1004(2). *Field*, 05.1 I.B.C.R. at 14; *In re Moore*, 01.4 I.B.C.R. 147, 149 (Bankr. D. Idaho 2001). An automatic exemption (*i.e.*, one established without the need for a recorded declaration) will arise only in a dwelling house or mobile home owned by the debtor, and the land upon which it sits, from and after the time the property is occupied as the debtor's principal residence. Idaho Code § 55-1004(1), *construed in In re Field*, 05.1 I.B.C.R. at 14. In all other instances described in Idaho Code § 55-1004(1) and (2), the debtor must execute and record the proper declarations.

In this case, on the petition date of January 13, 2005, a valid claim of exemption in the Ashton Hills Property existed because Debtor not only occupied the house as his principal residence, but he had also recorded a declaration of homestead. Debtor's property was originally unimproved land, and to exempt it, Debtor would have been required to execute and record a declaration of homestead according to Idaho Code § 55-1004(2) and (3). But, Debtor's house was sufficiently completed by the summer of 2003, well before Debtor filed his bankruptcy petition, that Debtor decided to move his belongings into the house

SUPPLEMENTAL MEMORANDUM OF DECISION - 12

and begin living there, despite the absence of running water or other usual amenities. In other words, as of the summer of 2003, the Ashton Hills Property had been improved with the partial construction of a house in which Debtor lived as his principal residence. As a result, Debtor was entitled to a homestead exemption on the property that arose automatically by operation of Idaho Code § 55-1004(1), which exemption protected both the house and the land from and after the time Debtor occupied the house.

Because of the unfinished condition of the house, Keller questions Debtor's claim that he actually "lived" in the house, arguing by implication that the automatic exemption never arose. And Keller points out Debtor had not obtained a certificate of occupancy legally allowing him to live in the house. While construction of the home was in large part incomplete, and while conditions in the structure were obviously spartan and uncomfortable for Debtor, it is not the Court's province to question Debtor's unusual living arrangements. *See In re Jelavich*, 02.2 I.B.C.R. 95, 96 n.6 (Bankr. D. Idaho 2002) (noting that the homestead statutes must be construed to allow an exemption by a debtor residing in a commercial building, and that other courts have permitted exemptions claimed in such unusual abodes as grist mills, stables, and bars). That Keller objects to the reasonableness of Debtor's decision to occupy the house under such conditions is

SUPPLEMENTAL MEMORANDUM OF DECISION - 13

not enough to refute the evidence that Debtor was actually residing there. Nor do Debtor's apparent violations of the local regulations impair his homestead exemption. *See In re Pich*, 00.4 I.B.C.R. 183, 185 (Bankr. D. Idaho 2000) (holding that the debtor's occupancy of a building in violation of zoning ordinances would not, standing alone, vitiate the homestead exemption claimed); *Bishop v. Conley* (*In re Conley*), 00.1 I.B.C.R. 15, 21 (Bankr. D. Idaho 2000) ("Proof of an ability to presently or at some future point actually occupy the property is not part of the requirements for homestead by declaration . . . .").

In addition to establishing a homestead exemption by actually residing in the house, Debtor also executed and recorded a declaration of homestead. A declaration is mandatory if the owner intends to claim a homestead exemption in either unimproved land or improved land not yet occupied. *See In re James*, 05.1 I.B.C.R. at 16; *In re Moore*, 01.4 I.B.C.R. at 149. But nothing in Idaho Code § 55-1004(1) or (2) prohibits an owner otherwise entitled to an automatic exemption in property occupied as a principal residence from also filing a declaration of homestead. Indeed, Debtor's decision to record a homestead declaration, although not required since he was living in the house, was probably prudent given the state of construction on his residence and his temporary absences to find work.

SUPPLEMENTAL MEMORANDUM OF DECISION - 14

For a declaration to establish an exemption, the declaration must contain all of the information required by Idaho Code § 55-1004(3). That section requires a declaration to contain:

> (a) A statement that the person making it is residing on the premises or intends to reside thereon and claims the premises as a homestead;
> (b) A legal description of the premises; and
> (c) An estimate of the premises [sic] actual cash value.

Idaho Code § 55-1004(3). In addition, the declaration of homestead "must be acknowledged in the same manner as a grant of real property is acknowledged." Idaho Code § 55-1004(5). *See* Idaho Code § 55-701–730 (delineating the statutory requirements for acknowledgments).

In this case, Debtor executed and recorded a declaration of homestead on October 16, 2003, that fulfilled all of the required elements.[8] In the declaration, Debtor stated that he intended to reside in a dwelling to be constructed on the Ashton Hills Property, which property was identified by an appropriate legal description, and that he claimed the premises as his homestead. He estimated the property's cash value at $60,000. Debtor's signature was properly acknowledged, Idaho Code § 55-710 (setting forth the required form of an

---

[8] Keller concedes that Debtor established a homestead exemption by declaration. Post-Hearing Brief at 7, Docket No. 27. Keller argued, however, that Debtor recorded the declaration after it had recorded its judgment. The Court has explained above that, for purposes of § 522(f)(1)(A), the priority of Keller's lien under state law is irrelevant.

SUPPLEMENTAL MEMORANDUM OF DECISION - 15

acknowledgment), and there was no evidence presented that Debtor ever revoked the declaration.

The Court concludes that on the bankruptcy petition date of January 13, 2005, Debtor's Ashton Hills Property was protected by a homestead exemption, which arose both automatically upon his occupation of the house, and by virtue of the recorded declaration.

### 3. Abandonment.

Keller argues both that Debtor's absence from the Property during his incarceration between July 8 and December 29, 2004, and his recent absence beginning in January 2005, near the date he filed his bankruptcy petition, show that Debtor abandoned his homestead as provided by Idaho Code § 55-1006, therefore requiring Debtor to file a declaration of nonabandonment. The Court disagrees.

The statute presumes that a homestead is abandoned if the owner vacates the property for a continuous period of at least six months. Idaho Code § 55-1006. While the owner can rebut the presumption upon an adequate evidentiary showing, *see In re Millsap*, 122 B.R. 577, 580 (Bankr. D. Idaho 1991), a debtor may also execute and acknowledge a declaration of nonabandonment of homestead and record it with the county recorder's office. Idaho Code § 55-1006.

SUPPLEMENTAL MEMORANDUM OF DECISION - 16

Debtor, however, recorded a declaration of homestead under Idaho Code § 55-1004(2).

The Court has analyzed the effect of recording a declaration of homestead after a homestead exemption had also been established by the debtor's residency in *Bishop v. Conley* (*In re Conley*), 00.1 I.B.C.R. 15, 21 (Bankr. D. Idaho 2000). There, the debtor also sought to avoid a judicial lien under § 522(f)(1)(A) that impaired his homestead exemption claim in a parcel of bare ground. The debtor had previously lived at the property, but when he ceased to do so, he filed both a declaration of homestead and, later, a declaration of nonabandonment. The lien creditor argued that the debtor's absence indicated that the debtor had abandoned his homestead. However, the Court held that when property has been declared a homestead by recording a declaration of homestead under Idaho Code § 55-1004(2), the debtor's absence from the property has no effect. *Bishop*, 00.1 I.B.C.R. at 21. The Court also held that a homestead claimed on unimproved property by a declaration filed under § 55-1004(2) is never lost, unless the debtor rescinds the election in order to assert a different homestead. *Bishop*, 00.1 I.B.C.R. at 21. The subsequently recorded declaration of nonabandonment also had no effect, because once the declaration of homestead had been recorded, the debtor's "physical presence on or absence from [the

SUPPLEMENTAL MEMORANDUM OF DECISION - 17

property was] immaterial to a homestead claimed by declaration under Idaho Code § 55-1004(2)," as there was no risk of implied abandonment. *Id.*

Although this case involves a partially constructed residence, not bare ground, Debtor recorded a declaration of homestead to remove any doubt that he was claiming the Ashton Hills Property as his homestead. As in *Conley*, then, his physical presence on, and periodic absences from, the property are immaterial. There is no evidence that Debtor ever rescinded the declaration that he recorded in October 2003, and the property remained protected by the exemption continuously thereafter.

In addition, in this case, Debtor submitted sufficient evidence to overcome any presumption of abandonment of his homestead even if recording of the declaration was not effective to preserve his exemption. Obviously, during his incarceration, Debtor had no choice but to be away from his house. Debtor's other absences from the property were occasioned by his employment. *See In re Millsap*, 122 B.R. at 580 (finding no abandonment when the owner's temporary absences were occasioned by his job, and no evidence of intent to abandon the homestead). The evidence showed, in spite of these other temporary living arrangements, Debtor always intended the Fremont County property to be his

SUPPLEMENTAL MEMORANDUM OF DECISION - 18

principal residence and his homestead. The Court finds and concludes that Debtor did not abandon his homestead.

## Conclusion

Based on this record, the Court concludes that on the petition date the Ashton Hills Property was exempt because an automatic exemption had arisen upon Debtor's occupation of the house as his principal residence, and he had recorded a valid homestead declaration prior to filing bankruptcy. Keller's judicial lien on that property impairs Debtor's homestead exemption. That judgment lien may therefore be avoided under § 522(f)(1)(A).

A separate order disposing will be entered.

Dated: August 3, 2005

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge